UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARY ANN SWEENEY,

               Plaintiff,                    CIVIL ACTION NO. 04-40284

               v.                      DISTRICT JUDGE PAUL V. GADOLA

CORRECTIONAL MEDICAL              MAGISTRATE JUDGE VIRGINIA MORGAN
SERVICES, INC.,

               Defendant.
_____/

## REPORT AND RECOMMENDATION

      This matter is before the court on the motion of defendant to dismiss or for summary judgment. Plaintiff, a medical records clerk, was employed by defendant Correctional Medical Services (CMS) and assigned to the Macomb County Jail. Following an auto accident and surgery, she was terminated after her return from leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1). She brought suit alleging violations and retaliation under the FMLA, and wrongful discharge and retaliation under state law. The matter was referred to the undersigned in June, 2006. Oral argument was held in August, 2006.

      But for the issue of employer coverage, there was little doubt that the motion should be denied. Plaintiff produced evidence which established her *prima facie* case and material facts remained in dispute regarding defendant's alleged non-discriminatory non-pretextual reason for the discharge. However, CMS argued that despite the fact it provides medical services in at least

- 1 -

20 of Michigan's correctional facilities, it did not have the requisite 50 employees to be covered

as they were not within 75 miles of the facility where plaintiff worked and so the court was

without jurisdiction to entertain this action.  That issue had not been raised earlier in the case,

either as an affirmative defense or otherwise.  The court granted additional limited discovery and

the filing of supplemental briefs on this issue because it was alleged to be a question of subject

matter jurisdiction.  The parties stipulated to an extension of time and supplemental briefs were

filed in November, 2006.

The court has reviewed these and for the reasons set forth in this Report, it is recommended that

the motion be denied and the case proceed to trial.

In reviewing defendants' motion for dismissal and/or summary judgment, the court has

examined affidavits and exhibits provided by both parties.  When the court considers materials

submitted in addition to the pleadings, Federal Rule of Civil Procedure 12(b) provides that "the

motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

Rule 56 of the Federal Rules of Civil Procedure, provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

In ruling on a motion for summary judgment, the Supreme Court's decision in <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317 (1986), provides guidance.  The Court rejected a standard which

required moving parties to support their motions for summary judgment with an affirmative

evidentiary showing which tended to negate the essential elements of plaintiff's case.  <u>Id</u>. 477

U.S. at 324. Instead the Court said, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the non-moving party's case."  Id.  Of course, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).  Once the moving party has made this showing, the burden passes to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id.; see also, Roby v. Center Companies, 679 F.Supp. 664 (E.D. Mich. 1987).

*Background*

        Plaintiff was an administrative employee of defendant CMS at the Macomb County Jail, first as a supply clerk beginning in 1999, and following her promotion, as an administrative assistant.  (Plaintiff's Dep. p. 6; Stalinski's Dep. p. 12)  During the relevant time period, she reported to her supervisor Ms. Gibson.  Plaintiff's duties included preparing correspondence, compiling and preparing reports and documents, maintaining documents, managing medical records and supplies, scheduling meetings, appointments, and assignments for other staff, and managing outside patient appointments of the inmates.  She supervised one full-time medical records employee and two part-time employees, including approving their requests for time off and conducting their performance evaluations.  (Gibson's Dep. p. 44)  As part of her duties, plaintiff was required to take minutes at staff meetings and the monthly Advisory Committee meeting attended by the jail administrator.  (Gibson's Dep. pp. 34-36)  She used a tape recorder and also took notes in longhand.  She would then type the minutes and give them to the Health

Service Administrator or Director of Nursing for their review and editing. (Gibson's Dep. p. 35; Stalinski's Dep. p. 55)

The medical staff meeting was held the first Tuesday of the month and alternated times 7:30 a.m. or 7:30 p.m. to accommodate the two shifts. When the meeting was in the evening, plaintiff would work her regular shift, leaving at 3:30 p.m. and then return four hours later to take minutes at the meeting. (Gibson's Dep. p. 50) The meetings were held in the nurses' station, a small room, crowded with the 10 to 15 staff members who attended these meetings. Plaintiff always sat at a counter in swivel chair to take the minutes. (Gibson's Dep. pp. 85-87; Stalinski's Dep. pp. 49-54)

Plaintiff had several medical problems and family issues during her employment with CMS. Early in her tenure, she was diagnosed with Hodgkins disease. She was treated for this cancer and recovered. (Plaintiff's Dep. p. 31) She also had migraine headaches which were controlled with prescription Fiorinal and she generally did not need accommodation for this condition. She also testified that she experienced pain as a result of TMJ and had surgery for this after her termination. (Plaintiff's Dep. pp. 32-33, 45-47) Between April 2002 and April 2003, her marriage began falling apart. (Plaintiff's Dep. p. 33) On April 17, 2002, she had a severe migraine and called in sick. She took her Fiorinal and later when the headache would not go away, took additional medication, perhaps Valium or Xanax which were also prescribed for her. (Plaintiff's Dep. pp. 67-68) While she has no memory of the event, she apparently drove her car, blacked out, and had an automobile accident in which her neck was broken. (Plaintiff's Dep. pp. 10-12) Although the ER doctor reported that she told him she had three drinks (she has

- 4 -

no memory of this conversation), her former husband believes that this would be unlikely and the police report indicated that no alcohol had been involved. (Mr. Sweeney's Dep. p. 45; Traffic Crash Report, Ex. 5 to D/E 23) She required three months to recover. She did not drive for seven months. Based on the advice of her then-supervisor Coy Bruce, she relied on her own individual disability policy and did not make a claim against defendant's policy or take an FMLA leave.

On July 29, 2002, she returned to work part-time with lifting restrictions, and in a cervical collar. By September, 2002, she resumed work full-time but with a neck brace. (Plaintiff's Dep. pp. 13, 15) In October, 2002, plaintiff learned that the neck was not healing properly and surgery would be required. She decided to take FMLA leave for the surgery and so advised her supervisor Royace Gibson. She told plaintiff that if plaintiff took time off for the surgery, Ms. Gibson could not hold her position open for her for more than two weeks. (Plaintiff's Dep. p. 21) She told her husband of this conversation. (Mr. Sweeney's Dep. pp. 14-15) Plaintiff then checked with Kim Mosby in Human Resources who advised her that Gibson was wrong. Ms. Mosby told plaintiff that so long as plaintiff had a release from her doctor, there would be no problem returning to work after the surgery. Later that day, Gibson called plaintiff, angry that she had gone over her head and threatened plaintiff not to do so again. (Plaintiff's Dep. p. 49) Plaintiff took her FMLA leave, had successful cervical fusion surgery, and returned to work two weeks later on November 25, 2002, with the restriction she not lift over five pounds. (Plaintiff's Dep. pp. 14-15)

Upon her return, her workload had increased due to the NCCHC accreditation process and Corporate Compliance training information due by December 31, 2002.  (Stalinski's Dep. pp. 18-19; Gibson's Dep. pp. 50-51)  Within a month after her return, Gibson disciplined her and placed her on a progressive disciplinary process, despite never having any previous discipline. Referenced were two clerical errors she made in the first week after her return-sending original documents instead of copies and faxing out-of-date compliance documents.  Although she corrected these errors, three additional days were noted as performance issues.

Plaintiff, who had remaining personal time-off days, took three or four more additional days off over the next several months for residual problems related to her surgery.  On each occasion she called Gibson at home at 5:30 a.m. to tell her that she was ill and would not be at work.  (Plaintiff's Dep. p. 50)  On March 19, 2003, Gibson gave her another disciplinary memo for missing work, describing these as excessive absenteeism in violation of the Time and Attendance policy, although unable to describe how these legitimate absences violated the policy.  (Gibson's Dep. p. 74)

On April 22, 2003, plaintiff worked from 7:00 a.m. until 3:30 p.m., when she punched out.  (Stalinski's Dep. p. 70; Gibson's Dep. p. 81)  Plaintiff went home, changed out of her work clothes and did some laundry.  Her husband (she was still married at the time) came home early and they decided to go out for dinner. They drove in two cars to a restaurant two miles from the Macomb County Jail, and arrived around 4:30 p.m.  Plaintiff had one glass of wine with dinner, her husband had two glasses, and they finished dinner around 5:45 p.m. (Plaintiff's Dep. pp. 20, 28-30; Mr. Sweeney's Dep. p. 21)  Plaintiff and her husband drank socially but did not drink at

home, and plaintiff would have no more than one or two beers every few weeks.  (Plaintiff's

Dep. p. 67; Mr. Sweeney's Dep. p. 33-34)  They remained at the table and talked until plaintiff

left to drive herself to the 7:30 p.m. staff meeting.  Nothing in her demeanor or behavior caused

Mr. Sweeney to think that she was intoxicated and he had never known her to abuse alcohol.

(Mr. Sweeney's Dep. p. 48)

Plaintiff sat next to Gibson at the meeting.  Plaintiff took minutes and gave a presentation

on a change in the Blue Cross system for reimbursement of medical specialists.  (Plaintiff's Dep.

p. 95)  During the meeting, Gibson passed plaintiff a note that said Gibson could smell liquor.

Plaintiff told Gibson that she had one glass of wine at dinner when she was off the clock and that

they had tried out a new restaurant.  Gibson said nothing further and plaintiff continued to take

notes.  (Plaintiff's Dep. p. 31; Gibson's Dep. pp. 98, 114; Stalinski's Dep. p. 78)

Gibson left the room during the meeting and called Rebecca Hess, her regional

supervisor, and reported to her that plaintiff admitted that she had been drinking.  (Gibson's Dep.

p. 98)  Gibson told Hess that she was going to suspend plaintiff and was uncomfortable letting

her drive home.  Catherine Stalinski, then-director of nursing, conducted the meeting that

evening and sat three or four feet from plaintiff.  At her deposition, she described plaintiff as

easy going and casual with a raspy voice.  Although in her opinion plaintiff was loud and

boisterous, plaintiff did not disrupt the meeting and, as usual, during the meeting plaintiff

concentrated on taking notes and did not interact with people.  (Stalinski's Dep. p. 58)  Both

Stalinski and Gibson admitted that there was nothing unusual in plaintiff's behavior that

evening.  She neither stumbled or slurred her words.  She was outgoing and personable.

- 7 -

(Stalinski's Dep. pp. 76-77; Gibson's Dep. p. 99)  Stalinski testified that she had never observed plaintiff to be under the influence or intoxicated at work, and that she worked closely with her. (Stalinski's Dep. pp. 22-23, 38)  Even Gibson testified that she had never noticed plaintiff to smell of alcohol or suspected her of being under the influence of alcohol or other medication while on the job.  (Gibson's Dep. p. 88)  No one at the meeting reported anything to Gibson about plaintiff's behavior or being drunk at the meeting.  (Gibson's Dep. p. 108)  Diane DeBene, a CMS licensed practical nurse, attended the meeting and denied that plaintiff had been loud or boisterous, noting that plaintiff is not a quiet person.  She was surprised when she learned that plaintiff had been fired for intoxication as she had not observed her to be in that state.  In fact, when she heard that plaintiff had been discharged, she assumed it was because plaintiff had missed so much work.  (DeBene's Dep. p. 41)  Karen Sogge, another attendee and LPN, did not observe plaintiff being loud or boisterous and had no sense that plaintiff was under the influence of alcohol.  There was nothing out of the ordinary in her behavior that night.  (Sogge Dep. pp. 23, 24, 25)  She had never noticed plaintiff to be under the influence of any alcohol or medication, even when they took smoking breaks together.  (Sogge Dep. pp. 15, 20)

After the meeting, Gibson told plaintiff she was being suspended, threatened to call the police if plaintiff drove, and required that her husband come pick her up.  (Plaintiff Dep. p. 32; Mr. Sweeney Dep. p. 24; Stalinski Dep. p. 78; Gibson Dep. pp. 104-105)  The next day, plaintiff brought in the restaurant receipt to show Gibson that she had only one glass of wine.  (D/E 23, Ex. 9, Receipt from Aspen Lounge; Stalinski Dep. pp. 69-70)  Despite review of the receipt, Gibson called HR and recommended that plaintiff be terminated.  Gibson told plaintiff that she

was terminated in violation of the company policy that prohibits coming to work under the influence of alcohol.  (Gibson Dep. p. 108)

Plaintiff appealed her termination to Kim Mosby, who told her to appeal to the Regional Administrator Rebecca Hess or Reed Heflin, Regional Vice President.  Plaintiff did so, advising them that she was not intoxicated, that she only had one glass of wine two hours before the meeting, when she was off the clock for four hours.  The appeal was denied, stating that the termination was in violation of the Employee Success Guide which prohibits reporting for duty under the influence of an intoxicant.  (D/E 23, Ex. 13)

*FMLA Claim*

The FMLA permits certain qualifying employees to take up to twelve weeks of unpaid time off of work to recover from a serious medical condition and requires employers to restore such an employee to her pre-leave position upon return from leave.  29 U.S.C. § 2611 et seq.  It is undisputed that plaintiff is a qualified employee.  This circuit has identified two separate theories of recovery under the FMLA: interference and retaliation.  Hoge v. Honda of Am. Mfg, 384 F3d 238, 244 (6th Cir. 2004).  The Act provides that an employer may not interfere with, deny, or restrain an employees exercise or attempt to exercise the right to FMLA leave.  29 U.S.C. § 2615(a)(1).  Neither may an employer retaliate against an employee by discharge or other discriminatory adverse action.  An employer is prohibited from discriminating against employees who have used FMLA leave and it may not be used as a negative factor in employment actions.  29 C.F.R. § 825.2208; Bukta v. J.C. Penney Co., 359 F.Supp.2d 649, 659-660 (ND Ohio, 2004).

- 9 -

The elements of an FMLA claim for interference are (1) the employee is covered by the Act; (2) the employer is covered by the Act; (3) the employee was entitled to leave under the FMLA; (4) the employee gave notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits or interfered with FMLA rights to which the employee was entitled.  Hoge v. Honda of Am. Mfg, 384 F.3d 238, 244 (6th Cir. 2004).

The elements of a retaliation under the FMLA are similar to those in the Title VII context.  That is, (1) the employee availed herself of a right that is protected under the FMLA; (2) the employee suffered an adverse employment action; and (3) there is a causal connection between the plaintiff's protected activity and the adverse employment action.  See, Canitia v. Yellow Freight, 903 F.2d 1064, 1066 (6th Cir. 1990) (Title VII); Jeremy v. Northwest Ohio Dev Ctr., 33 F.Supp.2d 635, 639 (ND Ohio, 1999) (citing Canitia and stating elements of *prima facie* case in FMLA context).

### *Interference and Retaliation for Taking FMLA Leave*

Except as is discussed below regarding the defendant's status as a covered employer, there is no doubt that plaintiff has established all of the elements of a *prima facie* case.  Further, although defendant has put forth allegations of a legitimate, non-discriminatory reason, material issues of fact preclude making this determination as a matter of law.  Thus, there is no basis upon which to grant summary judgment.

More than sufficient evidence has been set forth for a reasonable jury to conclude that the actions of the employer were designed to interfere with and to retaliate against the plaintiff for exercising her rights under the Family Medical Leave Act.  The parties do not dispute that

- 10 -

plaintiff is a covered employee, she was entitled to take leave under the FMLA, she gave notice of her intention to take, and did take, leave under the FMLA.  Her supervisor, Gibson, commented that she could not hold the job if she took more than two weeks.  When plaintiff checked with Human Resources and was told otherwise, plaintiff's supervisor called her, angry that she had inquired of Human Resources about her leave rights.  Gibson was clearly annoyed that plaintiff took additional days off, although she had these days available to her and used them in connection with her recovery for the surgery she had while on FMLA leave.  Only a few days after plaintiff's return to work, plaintiff was disciplined by Gibson for mistakes which could be described as minor and which plaintiff corrected.  One month later Gibson placed her on progressive discipline.  Gibson then fired her for the alleged reason that she "had been drinking." No one else at the meeting supported Gibson's conclusion that plaintiff was intoxicated and Gibson refused to change her stance even in the face of the restaurant receipt showing only one glass of wine at dinner during a period of time when plaintiff was not working.  These facts could well establish the required causal connection between the plaintiff's use of protected leave and the decision to terminate plaintiff.  And, while retaliation requires an adverse employment act, interference does not.  Thus, the discipline and write-ups, even though perhaps not adverse, may constitute interference if not retaliation.  Defendant's motivation and intent are clearly jury issues.  The potentially lawful reasons for these actions do not render it proper to grant summary judgment.  Under the mixed motives doctrine of Price Waterhouse v. Hopkins, 490 U.S. 228, 240-241(1989); and Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-102 (2003), the plaintiff need only prove that an illegal motive was "a" factor, not the sole reason, or at most (as argued by

- 11 -

defendant) a "significant factor."  See, <u>Gibson v. City of Louisville</u>, 336 F.3d 511 (6th Cir.

2003); <u>Aho v. Mich Dept. of Corrections</u>, 2004 Mich. App. Lexis 2161.

Defendants argument that there was insufficient "temporal proximity" and "no proof that

CMS's reason for discharge was false," misapprehend the nature of the summary judgment

standard.  Whether the actions were close enough in time to reflect causality is a question of fact

for the jury.  Further, it is CMS who must prove the legitimate non-pretextual reason for

discharge.  There is quite a bit of evidence here for a jury to conclude that CMS did act for

illegitimate reasons designed to discourage plaintiff and others from exercising their rights under

the FMLA.

CMS's policy only prohibits intoxication or the abuse of alcohol on the job.  Section 5.1

of CMS's Institutional Policies of the Employee Success Guide provides that no employee when

reporting for duty shall be *under the influence* of an intoxicant.  (D/E 23, Ex. 14, p. 17-18)(italics

added)   There is no showing as a matter of law that plaintiff was under the influence of any

drug, medication, or alcoholic beverage.

Defendant now claims that plaintiff was bound by a Macomb County prohibition which

provides that "the odor of intoxicants on the breath of a member reporting for duty, or while on

duty, is deemed sufficient evidence that the member is unfit for duty."  (D/E 23, Ex. 15)  These

rules were not provided to CMS employees and it was only in preparation for her deposition that

Catherine Stalinski requested the document.  (Stalinski Dep. pp. In this case, plaintiff has

established that the defendant knew of her medical and surgical conditions, that she took leave to

deal with these issues, and that she suffered adverse employment action.  To the extent that CMS

disputes the reasons for the discharge, a reasonable jury could find that defendant violated the FMLA by terminating plaintiff based on pretextual reasons.  Summary judgment should be denied on this claim.

*Status of defendant CMS*

Raised for the first time in the reply to plaintiff's response to the motion for summary judgment is the claim that the court is without jurisdiction under the FMLA.  Subject matter jurisdiction is an objection that may be raised at any stage of the litigation, and because it involves the court's power to hear a case, can never be forfeited or waived.  When a federal court concludes that it lacks subject matter jurisdiction, the complaint must be dismissed in its entirety.  Fed.R.Civ.P. Rule 12(b)(1); Kontrick v. Ryan, 540 U.S. 443 (2004).  Because subject matter jurisdiction is a requirement that can be raised at any stage of litigation, the court permitted additional discovery and briefing in order to resolve this matter.  Upon further review, the court concludes that CMS is not entitled to summary judgment on the grounds that is exempt from the FMLA requirements, and that the question is not one of jurisdiction.

Following confusion by lower courts over whether the requirement of the employee-numerosity was jurisdictional, the Supreme Court clarified the issue in Arbaugh v. Y&H Corporation d/b/a The Moonlight Café, 546 U.S. 500, 126 S.Ct. 1235 (February, 2006).  In the context of a Title VII case, the Court held 8-0 that the employee-numerosity requirement relates to the substantive adequacy of plaintiff's claim, not jurisdiction, and therefore could not be raised defensively late in the lawsuit, i.e., after defendant had failed to assert the objection prior to the close of trial on the merits.  The Court discussed the dichotomy between subject matter

- 13 -

jurisdiction v. ingredient-of-claim-for-relief dichotomy and conceded that both the Supreme

Court and the lower courts have been less than meticulous on the distinction.  Id. at 1242.  While

the threshold issue of the number of employees may be decided as a matter of law, it is an

element for a jury decision if there are contested facts regarding its application.  Id. at 1244.  The

Tenth Circuit has recently applied the Arbaugh analysis to an FMLA case.  Hackworth v.

Progressive Casualty 468 F.3d 722, 726,  n.3 (10th Cir. 2006).

     Despite the Supreme Court decision in Arbaugh, CMS takes the position that this

circuit's decision in Douglas v. E.G. Baldwin & Assoc., 150 F.3d 604 (6th Cir. 1998) applies

and argues that the determination is still a jurisdictional one.  Contrary to defendant's contention,

the Douglas case is no longer good law in the circuit.  In Cobb v. Contract Transport, Inc. 452

F.3d 543 (6th Cir. 2006), the Court of Appeals noted that "because intervening Supreme Court

precedent has made clear that Douglas was incorrectly decided, we decline to follow Douglas

and instead hold that the district court had jurisdiction over plaintiff's claims," citing Arbaugh.

After discussion, the court further stated: "Even if this were insufficient to demonstrate that

Douglas no longer binds the courts of the Circuit, Arbaugh also expressly overruled this court's

decision in Armbruster v. Quinn, 711 F.2d 1332, 1335 (6th Cir. 1983) upon which the Douglas

panel based its holding, 150 F.3d at 607-608; Arbaugh, 126 S.Ct. at 1242."  Cobb, 452 F.3d at

550.

     Defendant CMS is a nation-wide provider of medical services to inmates of jails and

prisons.  (Gibson Dep. p. 16)  It has contract with the State of Michigan to service *all* state

correctional facilities and also services three county jails, including Macomb where plaintiff was

- 14 -

employed.  (Gibson Dep. pp. 18-20)  At the Macomb jail, there are CMS medical staff and also
county employees.  The FMLA requires 50 or more employees.  29 U.S.C. §2611(2)(b)(ii).
Here, CMS claims that it does not have more than 50 employees within a 75 mile radius of the
Macomb site.  Based on information provided by CMS, plaintiff prepared a list of 47 employees
at the Macomb facility.  (Plaintiff's Supplemental Brief D/E 38, Ex. 1)  According to plaintiff's
affidavit, there are six additional people whom plaintiff worked with who are not listed.  These
include John McGraw, Coy Bruce, Tammy Hagan, Sharon Rommeck, Susan Swan, and Michelle
Hiller.  These would make a total of 53.  In addition, there are 12 identified individuals who may
or may not be independent contractors or employees of CMS.  That makes a total of 65
employees.  While CMS disputes the status of some of these individuals and submits an affidavit
that there were less than 50, plaintiff has produced more than sufficient information to overcome
the motion for summary judgment.

 In response to defendant's claim that it is not covered, plaintiff argues that because CMS
offered plaintiff FMLA leave, which she took, it should be estopped from denying that it is not a
covered employer.  Plaintiff relies on Sorrell v. Rinker Materials, 395 F.3d 332 (6th Cir. 2005),
where the court found that equitable estoppel could apply to bar Rinker from challenging
Sorrell's entitlement to FMLA because it had given him unconditional approval for FMLA
leave.  In this case, the doctrine of equitable estoppel may apply but the determination of
whether to apply it will ultimately be a factual one.  The court is not willing to apply the doctrine
in the context of a response to defendant's motion.

- 15 -

_State Law Claim_

Similarly, the issue of defendant's actions under the Michigan civil rights law governing Persons with Disabilities, MCLA 37.1101 et seq., presents a jury question.  That statute prohibits retaliation for making a charge or filing a complaint.  Plaintiff  must show that she engaged in a protected activity, that her actions were known by defendant, that the defendant took an employment action adverse to her, and that a causal connection exists between the protected activity and the adverse employment action.  Mitan v. Neiman Marcus, 240 Mich. App. 679, 681 (2000).  Here, plaintiff complained to Human Resources regarding leave for her cervical neck fusion surgery, took leave, and shortly after her return received her first disciplinary action and subsequently was terminated for alleged intoxication after having one drink at dinner during the time she was not working.  These are sufficient factor to overcome the motion.

Accordingly, it is recommended that the defendant's motion for summary judgment be denied and the case proceed to trial.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

- 16 -

1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated:  February 22, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's
ECF System and/or U. S. Mail on February 22, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

- 17 -